UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

CRAIG JUNGWIRTH,

       Plaintiff,

  v.

UNITED STATES OF AMERICA,
and ELISA FRANCES GERMANO,
individually,

       Defendants.
_____/

## COMPLAINT

1. This is a civil action seeking money damages against Defendant UNITED STATES OF AMERICA, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., and Defendant ELISA FRANCES GERMANO, individually, pursuant to the Fourth Amendment and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*. The United States District Court for the Southern District of Florida has jurisdiction of this action under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1346.

2. Plaintiff CRAIG JUNGWIRTH has fully complied with all conditions precedent to bringing this action imposed by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and 28 U.S.C. § 1346(b), and 28 U.S.C. § 2401(b), including the exhaustion of administrative remedies contained in 28 U.S.C. § 2675(a). Plaintiff's notice of claim was sent on May 9, 2017, by certified mail (return receipt requested). *(Standard Form 95 attached as Exhibit 1)* There has been no administrative denial of the Plaintiff's claim and more than six-months has elapsed. *Taumby v. U.S.*, 919 F.2d 69, 70 (8th Cir. 1990) ("[T]there is no time limit for the filing of an FTCA action when an

administrative claim is deemed to be denied under 28 U.S.C. § 2675(a) (1988) by virtue of an agency's failure to finally dispose of the claim within six months"); *McCallister v. U.S. By and Through U.S. Dept. of Agriculture, Farmers Home Admin.*, 925 F.2d 841, 843 (5th Cir.1991) (same); *Pascale v. U.S.*, 998 F.2d 186, 193 (3rd Cir.1993) (same); *Lehman v. U.S.*, 154 F.3d 1010, 1015 (9th Cir.1998) (same).

## PARTIES

3. Plaintiff CRAIG JUNGWIRTH [hereinafter Plaintiff or Plaintiff JUNGWIRTH] is a citizen and resident of Orlando, Florida.

4. Defendant UNITED STATES OF AMERICA, through its agency, the Federal Bureau of Investigation (hereinafter "Federal Bureau of Investigation" or "FBI") and United States Secret Service, acted by and through its agents, employees and servants, including Elisa Frances Germano, as a member of the FBI's Miami Joint Terrorism Task force, and others.

5. At all times referred to herein, Defendant ELISA FRANCES GERMANO [hereinafter GERMANO or Defendant GERMANO] was a Special Agent with the United States Secret Service, assigned to, and under the control and supervision of, the Federal Bureau of Investigation's (FBI) Miami Joint Terrorism Task Force, and was acting under color of federal law, and in such capacity as an agent, servant, and employee of Defendant UNITED STATES OF AMERICA.

6. Plaintiff sues Defendant GERMANO in her individual capacity.

## FACTS

7. Based on information and belief, on or about August 30, 2016, an unidentified individual (hereinafter "the actual perpetrator") entered the Cyber City LAN Center, located in 5166 Wilshire Boulevard, Los Angeles, California.

8. The actual perpetrator purchased computer usage time, thereby providing the actual perpetrator with access to the internet using an IP address assigned to Cyber City LAN Center.

9. At all times material hereto, the Cyber City LAN Center did not require customers to provide personal or contact information, and the actual perpetrator paid with cash.

10. At all times material hereto, the Cyber City LAN Center did *not* provide any so-called "anonymizer" IP services that could be used by customers to access the internet in a manner that was untraceable.

11. Based on information and belief, while using a computer at the Cyber City LAN Center, the actual perpetrator posted communications on the internet, or caused communications to be published electronically, using Facebook (or in a format substantially similar to a Facebook post).

12. Using the alias "Craig Jungwirth" and the photograph of a person other than Plaintiff JUNGWIRTH, the actual perpetrator posted threatening communications, contrary to 18 U.S.C. § 875.

13. Based on information and belief, a person named "David Herbert" or a person falsely and fictitiously using the alias "David Herbert" responded to the threatening communications. *(A copy of the threatening communications and responses hereto are attached as Exhibit B)*

14. The posts between the actual perpetrator and "David Herbert" were then forwarded to tip lines at local law enforcement agencies and/or Federal Bureau of Investigation.

15. At all times material hereto, Plaintiff JUNGWIRTH was a member of the LGBT community and actively involved in owning and promoting LGBT events in south Florida, including but not limited to Beach Bear Weekend, in Fort Lauderdale, Florida.

16. As an owner and promoter of LGBT events, Plaintiff JUNGWIRTH was well known

to rival owners and promoters of LGBT events, and a direct competitor.

17. During the time the actual perpetrator was at the Cyber City LAN Center in Los Angeles, California, Plaintiff JUNGWIRTH was living in Orlando, Florida.

18. On August 30, 2016, Plaintiff JUNGWIRTH periodically used and communicated on Facebook.

19. At all times material hereto, none of Plaintiff JUNGWIRTH's Facebook communications were threatening, nor were any communications disparaging of the LGBT community of which Plaintiff JUNGWIRTH is himself a member– both as a gay man, a gay businessman, and owner and promoter of events marketed to gay men. To the contrary, Plaintiff JUNGWIRTH's communications on Facebook were an open celebration of the lifestyle and sexuality of gay men.

20. Based on information and belief, the threatening communications were made by the actual perpetrator using an IP address from the Cyber City LAN Center, in Los Angeles, California.

21. At all times material hereto, Plaintiff was never at the Cyber City LAN Center, and was in Orlando, Florida the entire day on August 30, 2016.

22. Following the posting of the threatening communications, Maryann T. Jungwirth, the mother of Plaintiff JUNGWIRTH was notified by Plaintiff's ex-boyfriend, and informed Plaintiff of the threatening communications.

23. On August 31, 2016, Plaintiff was detained outside his residence by a municipal police detective and a special agent with the Federal Bureau of Investigation.

24. Plaintiff JUNGWIRTH truthfully denied posting the threatening communications and was permitted to use the cell phone of the FBI agent in an effort to contact his attorney. Plaintiff

JUNGWIRTH's phone call to his attorney went to voice mail, whereupon Plaintiff JUNGWIRTH declined to answer additional questions without the benefit of his attorney being present during the interrogation. Notwithstanding the fact that the phone number for Plaintiff's attorney was thereafter stored in the FBI agent's cell phone, the FBI thereafter failed or refused to contact Plaintiff JUNGWIRTH's attorney to schedule an interview.

25. On September 3, 2016, Defendant GERMANO prepared a sworn affidavit in support of Plaintiff's arrest.

26. At all times material hereto, Defendant GERMANO knew that her sworn affidavit would be relied upon for the institution and continuation of criminal proceedings against Plaintiff.

27. The sworn affidavit prepared by Defendant GERMANO contained false statements and material omissions necessary to a finding of probable cause.

28. The sworn affidavit was submitted to U.S. Magistrate Judge Lurana S. Snow on September 3, 2016.

29. Based on the false statements and material omissions contained in Defendant GERMANO's sworn affidavit, Magistrate Judge Lurana S. Snow signed a criminal complaint against Plaintiff for the offense of threatening communications, in violation of 18 U.S.C. § 875.

30. The sworn affidavit prepared by Defendant GERMANO contained false statements necessary to a finding of probable cause, insofar as the sworn affidavit falsely alleged that Plaintiff's Facebook account number 743595083 was "the source of the threatening communications," when in fact, it was not. As Defendant GERMANO knew, the source (or Facebook account) of the threatening communications was unidentified and no threatening communications of any sort were ever located on Facebook account number 743595083.

31. The sworn affidavit prepared by Defendant GERMANO contained false statements necessary to a finding of probable cause, insofar as the sworn affidavit falsely alleged that IP addresses 97.101.149.33 and 97.101.171.6 were "provided by Facebook as the IP Addresses from which the threatening communications originated," when in fact, they were not. As Defendant GERMANO knew, the Facebook account (allegedly) associated with the threatening communications was unidentified, so there was no way for Facebook (or any other person or entity) to associate the threatening communications with IP address 97.101.149.33, IP address 97.101.171.6, or any other internet protocol address.

32. The sworn affidavit prepared by Defendant GERMANO contained false statements necessary to a finding of probable cause, insofar as the sworn affidavit falsely alleged that "on August 30, 2016, during the times the threats were posted," a person logged onto Facebook account number 743595083 "utilizing an electronic device associated with internet protocol (IP) address of 97.101.149.33 and 97.101.171.6" owned by Bright House Networks, LLC, and registered to Mary Jungwirth (at the address where Plaintiff lived with his elderly mother, Mary Jungwirth), when in fact, as Defendant GERMANO knew, the FBI had no knowledge of the date or time the threatening communications were transmitted by the actual perpetrator in interstate commerce, or were "posted" on Facebook. Defendant GERMANO knew only that screen shots of the threatening communications were transmitted to law enforcement tip lines via Facebook and/or Twitter on August 30, 2016 at 12:33 pm.

33. The sworn affidavit prepared by Defendant GERMANO contained material omissions, insofar as Defendant GERMANO omitted the material fact that the alleged threatening communication made on Facebook and associated with a user name of "Craig Jungwirth" did not

include a corresponding photograph of Plaintiff JUNGWIRTH, and instead, as Defendant GERMANO knew, included a photograph of some other person.

34. The sworn affidavit prepared by Defendant GERMANO contained material omissions, insofar as Defendant GERMANO omitted the material fact that Plaintiff JUNGWIRTH was an openly gay man and gay businessman, and owner and promoter of events marketed to gay men, and that it would be nonsensical (and personal and professional suicide) for Plaintiff to threaten to harm other members of the LGBT community (of which he is a member), or refer to members of the LGBT community in derogatory and hateful terms.

35. The sworn affidavit prepared by Defendant GERMANO contained material omissions, insofar as Defendant GERMANO omitted the material fact that, as Defendant GERMANO knew, Plaintiff JUNGWIRTH, as an owner and promoter of events marketed to gay men, including Beach Bear Weekend in Fort Lauderdale, Florida, was involved in on-going and continual business and/or personal disputes with other gay men associated with promoting and marketing competing events to gay men.

36. As a result of the on the false statements and material omissions contained in Defendant GERMANO's sworn affidavit, Plaintiff was arrested in Osceola County, Florida and held without bond in Fort Lauderdale, Florida, in *United States v. Craig Allen Jungwirth*, Case No. 16-6390-CR-Zloch/Hunt.

37. On November 7, 2016, in *United States v. Craig Allen Jungwirth*, Case No. 16-6390-CR-Zloch/Hunt, a hearing was held on Plaintiff's request for a bill of particulars, asking for the exact time and location of the threat, and the IP address associated with the threat.

38. In response to the bill of particulars, Defendant UNITED STATES OF AMERICA

admitted that a search warrant was directed to Facebook for account number 743595083, but the "original post" was not found in Facebook account number 743595083.

39.  In response to the bill of particulars, Defendant UNITED STATES OF AMERICA admitted that the screen shots forwarded to law enforcement authorities containing the alleged threatening communications did not include an IP address or Facebook account associated with the threat, whereupon the following colloquy occurred:

> [By U.S. Magistrate Judge Patrick M. Hunt]: And because you don't know the Facebook account that the . . . alleged threat originated from you're not able to isolate an IP address that it originated from?
>
> [By AUSA Anton]: That's correct, Judge.

40.  On November 15, 2016, a bond hearing was conducted in *United States v. Craig Allen Jungwirth*, Case No. 16-6390-CR-Zloch/Hunt, before United States Magistrate Judge Barry S. Seltzer, wherein Defendant UNITED STATES OF AMERICA admitted that "[w]e have not been able to find the original posting" and "[t]he evidence is weak at this moment," whereupon the following colloquy occurred:

> [By Mr. Anton]: [W]e have not yet located the post itself. And that's been one of the problems that the government has had. If we had the original posting or we had someone who saw it first we would be able to track it back. All we got is a screenshot that was sent to law enforcement that appears to be a Facebook post. Without any more information it's been very difficult to link it to an exact time or an exact IP address. The posts themselves only states a time of 21 minutes ago, 19 minutes ago, 17 minutes ago which would seem to indicate that it was posted on August 30th.
>
> [By Magistrate Judge Seltzer]: Right.
>
> [By Mr. Anton]: But because it had not been multiple hours having passed before the threat was disseminated there is no time stamp on the posts themselves that would say, let's say, August 30th at 1:59 p.m. so we don't have that information because we haven't located the original post as of yet.

[By the Court]: What was the basis for your probable cause then?

41. On January 3, 2017, Sr. United States District Judge William J. Zloch granted Defendant UNITED STATES OF AMERICA's request to dismiss the charge of threatening communications against Plaintiff.

42. The conduct of Defendant GERMANO as set forth herein, occurred under color of federal law.

## CAUSES OF ACTION

### COUNT I
### FEDERAL TORT CLAIMS ACT (FTCA) AGAINST UNITED STATES OF AMERICA

For his cause of action against Defendant UNITED STATES OF AMERICA in Count I, Plaintiff states:

43. Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 42.

44. No reasonably cautious law enforcement officer in the position of Defendant GERMANO would have believed Plaintiff was guilty-in-fact of transmitting threatening communications in interstate commerce.

45. Defendant GERMANO proximately caused criminal proceedings to be instituted or continued against Plaintiff with malice, and in the absence of probable cause that Plaintiff committed the offense of transmitting threatening communications in interstate commerce, by submitting a sworn affidavit to Magistrate Judge Lurana S. Snow containing materially false statements and material omissions.

46. At all times material hereto, Defendant GERMANO knew that her sworn affidavit

would be relied upon by Magistrate Judge Lurana S. Snow and submitted to prosecuting authorities for the institution and continuation of federal criminal charges against Plaintiff.

47. The conduct of Defendant GERMANO was reckless and without regard to whether the institution or continuation of federal criminal proceedings against Plaintiff were justified.

48. The federal criminal proceedings instituted and/or continued by Defendant GERMANO reached a bona fide resolution in Plaintiff's favor.

49. At all times material hereto, the conduct of Defendant GERMANO occurred within the course and scope of her employment for Defendant UNITED STATES OF AMERICA.

50. As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

51. As a further direct and proximate result of the conduct of Defendant UNITED STATES OF AMERICA, Plaintiff suffered loss of liberty and freedom, mental anguish and loss of capacity for the enjoyment of life. Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

   i.   Judgment for compensatory damages of $50,000,000;

   ii.  Costs, fees, and other expenses pursuant to 28 U.S.C. § 2412; and

   iii. Such other relief as this Honorable Court may deem just and appropriate.

### COUNT II
### "FRANKS V. DELAWARE" CLAIM AGAINST DEFENDANT GERMANO, INDIVIDUALLY, UNDER *BIVENS*

For his cause of action against Defendant GERMANO, individually, in Count II, Plaintiff states:

52.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 42.

53.     Defendant GERMANO proximately caused Plaintiff's prosecution and incarceration in federal custody without bond based on the false statements and material omissions contained in the sworn affidavit presented by Defendant GERMANO to United States Magistrate Judge Lurana S. Snow.

54.     No reasonably well-trained law enforcement officer in Defendant GERMANO's position would have submitted a criminal complaint against Plaintiff for the offense of transmitting threatening communications in interstate commerce without any evidence connecting Plaintiff to the Facebook account or IP address associated with the threatening communication (except a Facebook post using the name "Craig Jungwirth" and an accompanying digital image of an individual who is not Plaintiff JUNGWIRTH).

55.     Defendant GERMANO knowingly and deliberately, or with reckless disregard for the truth, made false statements or material omissions in her sworn affidavit, which were clearly critical to a finding of probable cause, and any reasonable law enforcement officer in Defendant GERMANO's position would have known the statements and material omissions would result in the issuance of a criminal complaint against Plaintiff in the absence of probable cause that Plaintiff was the actual perpetrator, in violation of Plaintiff's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.

56.     As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and

damaged reputation, including business reputation/goodwill.

57. As a further direct and proximate result of the conduct of Defendant GERMANO, Plaintiff suffered loss of liberty and freedom, mental anguish and loss of capacity for the enjoyment of life. Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

    i. Judgment for compensatory damages in excess of $15,000 dollars;

    ii. Judgment for punitive damages;

    iii. Cost of suit;

    iv. Trial by jury as to all issues so triable; and

    v. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III
## MALICIOUS PROSECUTION CLAIM UNDER THE FOURTH AMENDMENT AGAINST DEFENDANT GERMANO, INDIVIDUALLY, UNDER *BIVENS*

For his cause of action against Defendant GERMANO, individually, in Count III, Plaintiff states:

58. Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations of paragraphs 1 through 42.

59. No reasonably cautious law enforcement officer in the position of Defendant GERMANO would have believed Plaintiff was guilty-in-fact of transmitting threatening communications in interstate commerce.

60. Defendant GERMANO proximately caused criminal proceedings to be instituted or continued against Plaintiff with malice, and in the absence of probable cause that Plaintiff committed the offense of transmitting threatening communications in interstate commerce, by submitting a

sworn affidavit to Magistrate Judge Lurana S. Snow containing materially false statements and material omissions.

      61.    At all times material hereto, Defendant GERMANO knew that her sworn affidavit would be relied upon by Magistrate Judge Lurana S. Snow and submitted to prosecuting authorities for the institution and continuation of federal criminal charges against Plaintiff.

      62.    The conduct of Defendant GERMANO was reckless and without regard to whether the institution or continuation of federal criminal proceedings against Plaintiff were justified.

      63.    The federal criminal proceedings instituted and/or continued by Defendant GERMANO reached a bona fide resolution in Plaintiff's favor.

      64.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

      65.    As a further direct and proximate result of the conduct of Defendant GERMANO, Plaintiff suffered loss of liberty and freedom, mental anguish and loss of capacity for the enjoyment of life.  Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

      WHEREFORE, Plaintiff prays:

          i.    Judgment for compensatory damages in excess of $15,000 dollars;

          ii.    Judgment for punitive damages;

          iii.    Cost of suit;

          iv.    Trial by jury as to all issues so triable; and

          v.    Such other relief as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

66. Plaintiff demands trial by jury on all issues so triable as of right.

**DATED** this   1ˢᵗ   day of May, 2018.

> By:   *s/. Hugh L. Koerner*
> Hugh L. Koerner
> Florida Bar No.: 716952
> Email: hlklaw@hughkoerner.com
> Hugh L. Koerner, P.A.
> Sheridan Executive Centre
> 3475 Sheridan Street, Suite 208
> Hollywood, FL 33021
> Telephone:  (954) 522-1235
> Facsimile:   (954) 522-1176
> *Attorney for Plaintiff Craig Jungwirth*