# EXHIBIT 2

## Bond Hearing Transcript

Defendant Special Agent Elisa Germano's
Motion To Dismiss Plaintiff's Claims Against Her

*Craig Jungwirth v. United States of America, et al.*, No. 1:18-cv-21726-MGC

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                       16-60248-CR-ZLOCH/HUNT
 3

 4
   UNITED STATES OF AMERICA,      )
 5                                )
                  PLAINTIFF,      )
 6                                )
          VS.                     )
 7                                )
   CRAIG A. JUNGWIRTH,            )
 8                                )
                  DEFENDANT.      )
 9   _____ )

10                    (TRANSCRIPT BY DIGITAL RECORDING)

11

12          TRANSCRIPT OF CONTINUED BOND HEARING HAD BEFORE THE

13   HONORABLE BARRY S. SELTZER, IN FORT LAUDERDALE, BROWARD COUNTY,

14   FLORIDA, ON NOVEMBER 15, 2016, IN THE ABOVE-STYLED MATTER.

15

16
   APPEARANCES:
17
   FOR THE GOVERNMENT:  MARC S. ANTON, A.U.S.A.
18                      99 NORTHEAST 4TH STREET, 8TH FLOOR
                        MIAMI, FL 33132 - 305 961-9287
19
   FOR THE DEFENDANT:   MICHAEL D. SPIVACK, A.F.P.D.
20                      ONE EAST BROWARD BOULEVARD, SUITE 1100
                        FORT LAUDERDALE, FL 33301 - 954 356-7436
21

22

23                   CARL SCHANZLEH, RPR - CM
                     CERTIFIED COURT REPORTER
24                     9960 SW 4TH STREET
                     PLANTATION, FLORIDA 33324
25                       954 424-6723
```

 1 | (FORT LAUDERDALE, BROWARD COUNTY, FLORIDA;  NOVEMBER 15, 2016,

 2 | IN OPEN COURT.)

 3 |       THE COURT:  LET ME TAKE A MOMENT TO WELCOME YOU TO THE

 4 | COURTHOUSE TODAY BEING NOVEMBER 15, 2016.

 5 |       I WOULD LIKE TO START WITH THE CONTINUATION OF A BOND

 6 | HEARING.  LET ME CALL THE UNITED STATES OF AMERICA VERSUS CRAIG

 7 | JUNGWIRTH.  LET ME ASK MR. JUNGWIRTH TO (INAUDIBLE)

 8 |       LET ME ASK COUNSEL TO STATE THEIR APPEARANCES.

 9 |       MR. ANTON:  GOOD MORNING, YOUR HONOR.  MARC ANTON ON

10 | BEHALF OF THE UNITED STATES.

11 |       THE COURT:  WELCOME.

12 |       MR. SPIVACK:  GOOD MORNING, YOUR HONOR.  MICHAEL

13 | SPIVACK.  I HAVE MR. JUNGWIRTH.  JUDGE, I HAVE TO BE IN FRONT

14 | OF JUDGE COHN ABOUT FIVE OF NINE.

15 |       THE COURT:  ALL RIGHT.

16 |       MR. SPIVACK:  I JUST WANTED TO LET YOU KNOW.

17 |       THE COURT:  ALL RIGHT.  WELL, I WILL TRY TO MOVE

18 | EXPEDITIOUSLY.

19 |       MR. ANTON, AS I MENTIONED ON THE PHONE I WAS NOT ABLE

20 | TO ACCEPT THE STIPULATION GIVEN THE NATURE OF THIS CHARGE

21 | COUPLED WITH THE NATURE OF THE BOND RECOMMENDATION.

22 |       THERE WAS A REFERENCE BY MR. SMITH YESTERDAY TO THE

23 | GOVERNMENT'S EVIDENCE TO SUPPORT THE ALLEGATIONS AND THERE WAS

24 | A SUGGESTION THAT IT WAS NOT WHAT THE GOVERNMENT ONCE THOUGHT,

25 | COULDN'T QUESTION WHETHER IN FACT THE GOVERNMENT WAS GOING TO

1 | BE GOING FORWARD WITH THIS.  SO, I'M GLAD YOU'RE HERE.

2 | WHY DON'T YOU BRING ME UP TO SPEED AND EXPLAIN WHY THE

3 | BASIS FOR YOUR RECOMMENDATION YESTERDAY.

4 | MR. ANTON:  JUDGE, BASICALLY JUST AS A VERY BRIEF

5 | OVERVIEW OF THE CASE.

6 | BACK ON AUGUST 30TH THE FBI AS WELL AS WILTON MANORS

7 | P.D., FORT LAUDERDALE P.D., AND NUMEROUS OTHER LAW ENFORCEMENT

8 | OUTLETS RECEIVED NOTIFICATION THAT A POST HAD CIRCULATED ON THE

9 | INTERNET WHEREIN AN INDIVIDUAL BEARING THE SCREEN NAME OF CRAIG

10 | JUNGWIRTH HAD INDICATED THAT HE WAS PLANNING HARM TO THE WILTON

11 | MANORS LBTT COMMUNITY.

12 | BASED ON THOSE CONCERNS FOR VIOLENCE OVER THE LABOR

13 | DAY WEEKEND THAT WERE INDICATED IN THE THREATS, LAW ENFORCEMENT

14 | ON AUGUST 30TH BEGAN A VERY EXPEDITIOUS INVESTIGATION TO TRY TO

15 | DETERMINE WHO IF ANYONE WAS BEHIND THESE POSTS.

16 | THEY WERE ABLE TO DETERMINE FROM FACEBOOK, BECAUSE THE

17 | POST APPEARED TO BE A FACEBOOK POSTING BETWEEN AN INDIVIDUAL

18 | NAMED CRAIG JUNGWIRTH AND AN INDIVIDUAL BY THE NAME OF DAVID

19 | HERBERT.

20 | LAW ENFORCEMENT CONTACTED FACEBOOK AND WAS ABLE TO

21 | LEARN THAT AN INDIVIDUAL BY THE NAME OF CRAIG JUNGWIRTH WAS IN

22 | FACT ON THE INTERNET ON AUGUST 30TH AND FACEBOOK PROVIDED SOME

23 | IP ADDRESSES.

24 | LAW ENFORCEMENT THEN FOLLOWED UP ON THOSE IP ADDRESSES

25 | AND THEY ULTIMATELY RESOLVED BACK TO THE RESIDENCE OF CRAIG

 1  JUNGWIRTH'S MOM IN ORLANDO, FLORIDA.

 2        THEY CONDUCTED SURVEILLANCE OF MR. JUNGWIRTH.   LAW
 3  ENFORCEMENT APPROACHED MR. JUNGWIRTH AS HE WAS OUTSIDE AT ONE
 4  POINT, AND PRIOR TO DETECTIVES AND AGENTS EVEN HAVING AN
 5  OPPORTUNITY TO EXPRESS WHY THEY WERE THERE MR. JUNGWIRTH SAID,
 6  I DIDN'T POST ANY OF THOSE POSTS.  YOU COULD TALK TO ANY LAWYER
 7  ON ANYTHING FURTHER, WHICH SEEMED ODD TO LAW ENFORCEMENT ONLY
 8  BECAUSE THEY HAD NOT YET EXPLAINED TO MR. JUNGWIRTH WHY HE WAS
 9  THERE.

10        THEY THEN CONTINUED THEIR SURVEILLANCE ON HIM AND
11  ULTIMATELY WHEN HE STARTED COMING SOUTH TOWARDS THE MIAMI AREA
12  ON THAT SATURDAY MORNING OF LABOR DAY WEEKEND HE WAS ARRESTED
13  BY THE FLORIDA HIGHWAY PATROL FOR DRIVING ON A SUSPENDED
14  LICENSE.

15        INITIALLY LAW ENFORCEMENT WAS CONCERNED BECAUSE THAT
16  LABOR DAY WEEKEND, THAT SATURDAY, WAS THE WEEKEND IN WHICH
17  MR. JUNGWIRTH HAD INDICATED -- ALLEGED TO HAVE INDICATED ON THE
18  POSTS THAT HARM WAS GOING TO COME TO INDIVIDUALS IN SOUTH
19  FLORIDA.

20        SO BASED ON THAT INFORMATION THE GOVERNMENT CONTINUED
21  ITS INVESTIGATION AND SENT A SEARCH WARRANT TO FACEBOOK IN AN
22  ATTEMPT TO FIND THE UNDERLYING POST IN MR. JUNGWIRTH'S ACCOUNT.
23  AND AS I'VE INDICATED TO JUDGE HUNT AT A PREVIOUS HEARING, AND
24  I WILL INDICATE HERE AGAIN TODAY, THE SEARCH WARRANT DID NOT
25  REVEAL THE POST IN CRAIG JUNGWIRTH'S ACCOUNT THAT WAS SEARCHED

 1  BY LAW ENFORCEMENT.

 2        THEY THEN ATTEMPTED TO CONDUCT A SEARCH WARRANT ON THE

 3  DAVID HERBERT ACCOUNT, WHICH WAS THE OTHER SIDE OF THE

 4  CONVERSATION, AND THEY DO NOT LOCATE THE POSTS IN DAVID

 5  HERBERT'S ACCOUNTS EITHER.

 6        BUT INTERESTINGLY FACEBOOK DID IN FACT RETURN RESULTS

 7  THAT INDICATED THAT CRAIG JUNGWIRTH HAD APPROXIMATELY 59 OTHER

 8  FACEBOOK ACCOUNTS THAT THEY COULD NOT PROVIDE UNDER THE INITIAL

 9  SEARCH WARRANT BUT WOULD NEED A FOLLOW UP SEARCH WARRANTS IN

10  ORDER TO RETURN RESULTS ON.

11        SO ALL THIS WAS UNFOLDING AND WE HAD A TRIAL DATE THAT

12  WAS QUICKLY APPROACHING.  I HAD FILED A MOTION TO CONTINUE

13  WHICH WAS ULTIMATELY -- AT LEAST INITIALLY DENIED.  TRIAL WAS

14  SET FOR LAST WEEK, OR I GUESS IT WOULD HAVE BEEN THIS MONDAY

15  TODAY.

16        THE COURT:  RIGHT.

17        MR. ANTON:  A MOTION FOR RECONSIDERATION WAS FILED AND

18  ULTIMATELY JUDGE ZLOCH GRANTED THED THE GOVERNMENT'S REQUEST

19  FOR A CONTINUANCE AND SET THE CASE OFF UNTIL JANUARY 9TH.  BUT

20  AS I INDICATED TO JUDGE HUNT, AT THIS PARTICULAR POINT THE

21  EVIDENCE THAT THE GOVERNMENT HAS DOES NOT -- WELL, LET ME BACK

22  UP.

23        DEFENSE HAS SAID, WHERE IS THE POST LIST?  WHERE IS

24  THE POST LIST?  WHERE IS THE POST?  AND AT THIS POINT THE ONLY

25  THING THE GOVERNMENT CAN TELL DEFENSE COUNSEL IS THAT WE HAVE

Case 1:18-cv-24726-MGC   Document 12-2   Entered on FLSD Docket 07/27/2018   Page 7 of 28
Case 0:16-cr-60249-WJZ   Document 59   Entered on FLSD Docket 02/16/2018   Page 6 of 27

6

 1  WHAT APPEARED TO BE IMAGES OF THE POSTS AND THAT THEY WERE

 2  WIDELY CIRCULATED ON THE INTERNET BUT WE HAVE NOT BEEN ABLE TO

 3  FIND THE ORIGINAL POSTING.

 4        ALL THE COMPLAINANTS WHO HAVE COME FORWARD HAVE

 5  INDICATED THAT THEY EITHER SAW IT ON THEIR FACEBOOK FEED HAVING

 6  BEEN REPOSTED OR FORWARDED TO THEM FROM FRIENDS OR THEY SAW IT

 7  ON TWITTER HAVING SEEN IT FROM OTHERS WHO HAD FORWARDED IT TO

 8  THEM ON TWITTER.

 9        WE HAVE NOT BEEN ABLE TO FIND AT THIS POINT THE

10  ORIGINAL POSTING OR THE ORIGINAL INDIVIDUAL WHO SAW THE POSTING

11  ON A CRAIG JUNGWIRTH FACEBOOK PAGE.

12        SO THE GOVERNMENT'S INVESTIGATION IS CONTINUING, AND

13  QUITE HONESTLY AT THIS POINT IS LARGELY CIRCUMSTANTIAL BASED ON

14  THE FACT THAT THE SCREEN NAME ASSOCIATED WITH THE POST IS CRAIG

15  JUNGWIRTH.  THE PROVIDED INFORMATION THAT IS CONSISTENT WITH

16  THE CRAIG JUNGWIRTH WHO IS IN CUSTODY NOW, THAT CRAIG JUNGWIRTH

17  WOULD APPEAR TO HAVE A MOTIVE BASED ON ONGOING THREATS AND

18  CLAIMS OF HARASSMENT WITHIN THE WILTON MANORS COMMUNITY BUT THE

19  GOVERNMENT HAS NOT BEEN ABLE TO LOCATE THE ORIGINAL POSTING.

20        SO, IN EXCHANGE FOR THE CONTINUANCE AND THE FACT THAT

21  THE EVIDENCE IS WEAK AT THIS MOMENT THE GOVERNMENT INDICATED TO

22  DEFENSE COUNSEL THAT WE HAD NO OBJECTION TO HAVING THE

23  DEFENDANT RELEASED ON A BOND.

24        THE BOND WAS A $250,000 PERSONAL SURETY BOND WITH HOME

25  DETENTION AND ELECTRONIC MONITORING TO ALLOW THE GOVERNMENT TO

 1 | CONTINUE ITS INVESTIGATION BASED ON THE FACT THAT WE HAVE NOT
 2 | YET LOCATED THE ORIGINAL POST.

 3 | I WILL PROVIDE ONE ADDITIONAL FACT, AND THAT IS THE
 4 | DEFENDANT IS ALSO PENDING OR HAS IN PLACE A STATE NO BOND HOLD.
 5 | HE WAS OUT ON A MISDEMEANOR DEFRAUDING ON AN INKEEPER CHARGE IN
 6 | STATE COURT HERE IN BROWARD COUNTY.  HE VIOLATED THE TERMS AND
 7 | CONDITIONS OF THAT BOND BY PICKING UP A NEW STATE MISDEMEANOR
 8 | CRIMINAL MISCHIEF CHARGE.

 9 | SO THE STATE COURT JUDGE REVOKED THE MISDEMEANOR BOND.
10 | SO HE HAS A NO BOND STATE HOLD AS WELL.  SO THAT FACTORED INTO
11 | THE GOVERNMENT'S RECOMMENDATION TO THE COURT KNOWING THAT EVEN
12 | IF HE IS RELEASED HERE ON A FEDERAL COURT BOND HE COULD THEN GO
13 | INTO STATE COURT, HE'LL BE TIED UP THERE FOR SOME TIME UNTIL HE
14 | RESOLVES HIS STATE COURT MATTERS AND THEN AT THAT POINT WE
15 | WOULD BE ULTIMATELY RELEASED ON HOME DETENTION WITH ELECTRONIC
16 | MONITORING, PERHAPS A CONDITION OF NO COMPUTERS OR NO INTERNET
17 | USE.

18 | BUT THE GOVERNMENT BASED THE STRENGTH OF THE CASE AND
19 | THE DEFENDANT'S BACKGROUND WHICH DOES NOT INCLUDE ANY OTHER
20 | CRIMINAL HISTORY OTHER THAN TWO MISDEMEANOR CHARGES IS
21 | CONFIDENT THAT THE COMMUNITY WOULD BE SAFE FROM MR. JUNGWIRTH
22 | AND THAT THIS IS AN APPROPRIATE BOND IN THIS CASE AT THIS
23 | JUNCTURE.

24 | THE COURT:  DID YOU SAY THAT THE POST CAME BACK TO THE
25 | IP ADDRESS AT HIS MOTHER'S HOME?

Case 1:18-cv-24726-MGC   Document 52   Entered on FLSD Docket 07/27/2018   Page 9 of 28
Case 0:16-cv-60258-WPD   Document 59   Entered on FLSD Docket 02/16/2018   Page 8 of 27

8

1    MR. ANTON:  THE POSTS THEMSELVES?  NO.

2         THE WAY IT BASICALLY SHOOK OUT IS, THERE WAS A POSTING

3    THAT WAS CIRCULATING BEARING THE NAME OF CRAIG JUNGWIRTH.

4    FACEBOOK RESPONDED BACK TO LAW ENFORCEMENT AND SAID, YES.

5    CRAIG JUNGWIRTH WAS IN FACT ON LINE ON FACEBOOK ON AUGUST 30TH,

6    WHICH THE DATE THAT LAW ENFORCEMENT LEANRED --

7         THE COURT:  RIGHT.

8         MR. ANTON:  -- ABOUT THE POSTS.

9         THOSE FACEBOOK IP ADDRESSES RESOLVED BACK TO CRAIG

10   JUNGWIRTH'S MOM'S HOUSE.  SO WE HAVE A POSTING THAT APPEARS TO

11   COME FROM CRAIG JUNGWIRTH.  THE FACT THAT FACEBOOK SAYS A USER

12   BEARING THE NAME CRAIG JUNGWIRTH WAS IN FACT ON LINE AND THAT

13   THOSE IP ADDRESSES RESOLVE BACK TO THE CRAIG JUNGWIRTH WHO WAS

14   LIVING WITH HIS MOM IN ORLANDO WHO HAPPENS ALSO TO BE THE SAME

15   CRAIG JUNGWIRTH WHO WAS PREVIOUSLY LIVING IN WILTON MANORS,

16   FLORIDA, AND HAS THE TIES TO THE WILTON MANORS COMMUNITY --

17        THE COURT:  RIGHT.

18        MR. ANTON:  -- ESSENTIALLY CIRCUMSTANTIALLY PROVIDED

19   LAW ENFORCEMENT WITH THE PROBABLE CAUSE TO BELIEVE THAT THIS

20   WAS IN FACT THE CRAIG JUNGWIRTH.

21        LAW ENFORCEMENT FOLLOWED UP TO DETERMINE WHETHER OR

22   NOT THE CRAIG JUNGWIRTH PAGE THAT WE INITIALLY THOUGHT MIGHT

23   CONTAINED THE POST WOULD BE IN FACT CONTAIN THE POST, AND IT

24   WAS NOT RETURNED IN THE FIRST SEARCH WARRANT THAT WE EXECUTED.

25   BUT THERE ARE 59 OTHER CRAIG JUNGWIRTH FACEBOOK PAGES OUT

 1 THERE --

 2          THE COURT:  RIGHT.

 3          MR. ANTON:  -- ALL FORENSICALLY LINKED TO THE CRAIG
 4 JUNGWIRTH WHO IS SITTING HERE IN COURT TODAY.

 5          SO, HE HAS NOT ONE BUT, YOU KNOW, 58 OTHER ACCOUNTS
 6 THAT ARE LINKED EITHER BY IP ADDRESS OR MACHINE COOKIES WHICH
 7 BASICALLY THE (INAUDIBLE) COMPUTER TOUCHED CERTAIN ACCOUNTS.
 8 BUT FACEBOOK WAS CONFIDENT THAT HE HAS AT LEAST 58 OTHER
 9 ACCOUNTS OUT THERE AND IT WAS CERTAINLY POSSIBLE THAT EITHER A,
10 THE POST WAS DELETED FROM THE ACCOUNT THAT WE INITIALLY
11 SEARCHED; OR, B, THAT IT RESIDES IN ONE OF THE OTHER 57
12 ACCOUNTS.  THE GOVERNMENT HAS NOT FOUND THE ORIGINAL POSTING AS
13 OF YET.

14          THE COURT:  DID FACEBOOK TELL YOU WHETHER THE TIME OF
15 THAT POST COINCIDES WITH THE TIME OF THE USAGE OF THE COMPUTER
16 AT HIS MOTHER'S HOME?

17          MR. ANTON:  THEY DID NOT BECAUSE THEY HAVE NOT YET --
18 AND WE HAVE NOT YET LOCATED THE POST ITSELF.  AND THAT'S BEEN
19 ONE OF THE PROBLEMS THAT THE GOVERNMENT HAS HAD.

20          IF WE HAD THE ORIGINAL POSTING OR WE HAD SOMEONE WHO
21 SAW IT FIRST WE WOULD BE ABLE TO TRACK IT BACK.  ALL WE GOT IS
22 A SCREENSHOT THAT WAS SENT TO LAW ENFORCEMENT THAT APPEARS TO
23 BE A FACEBOOK POST.

24          WITHOUT ANY MORE INFORMATION IT'S BEEN VERY DIFFICULT
25 TO LINK IT TO AN EXACT TIME OR AN EXACT IP ADDRESS.  THE POSTS

 1  THEMSELVES ONLY STATES A TIME OF 21 MINUTES AGO, 19 MINUTES

 2  AGO, 17 MINUTES AGO WHICH WOULD SEEM TO INDICATE THAT IT WAS

 3  POSTED ON AUGUST 30TH.

 4          THE COURT:  RIGHT.

 5          MR. ANTON:  BUT BECAUSE IT HAD NOT BEEN MULTIPLE HOURS

 6  HAVING PASSED BEFORE THE THREAT WAS DISSEMINATED THERE IS NO

 7  TIME STAMP ON THE POSTS THEMSELVES THAT WOULD SAY, LET'S SAY,

 8  AUGUST 30TH AT 1:59 P.M.  SO WE DON'T HAVE THAT INFORMATION

 9  BECAUSE WE HAVEN'T LOCATED THE ORIGINAL POST AS OF YET.

10          THE COURT:  WHAT WAS THE BASIS FOR YOUR PROBABLE CAUSE

11  THEN?

12          MR. ANTON:  THE BASIS FOR THE PROBABLE CAUSE WAS THAT

13  THE POST WAS IN THE NAME OF CRAIG JUNGWIRTH WHO INDICATED THAT

14  HE HAD GONE TO MIT AND HAD A HISTORY WITH THE WILTON MANORS

15  COMMUNITY, THAT A USER BY THE NAME OF CRAIG JUNGWIRTH WAS IN

16  FACT ON LINE, THAT THE IP ADDRESS RESOLVED BACK TO A CRAIG

17  JUNGWIRTH'S MOM'S HOUSE IN ORLANDO, FLORIDA, GENERALLY DURING

18  THE TIME PERIOD THAT THE POSTS WOULD HAVE BEEN POSTED AND THAT

19  THIS CRAIG JUNGWIRTH HAD AN EXTENSIVE HISTORY WITH THE WILTON

20  MANORS COMMUNITY IN TERMS OF THERE ARE MULTIPLE STALKING

21  ALLEGATIONS AND COMPLAINTS, THERE ARE A WHOLE BUNCH OF OTHER

22  RESTRAINING ORDERS AGAINST HIM.  SO HE'S GOT -- HE WOULD APPEAR

23  TO HAVE HAD THE MOTIVE TO ISSUE THESE PARTICULAR THREATS.

24          MR. SPIVACK:  JUDGE, CAN I (UNINTELLIGIBLE) I HAVE TO

25  GO TO COURT.

```
 1            THE COURT:  WELL, OKAY.  THEN WE WILL CONTINUE IT TO

 2   TOMORROW.  I MEAN, THIS IS AN IMPORTANT MATTER.  I UNDERSTAND

 3   THE POSITION --

 4            MR. SPIVACK:  WELL, THE PROBLEM IS THIS, JUDGE.

 5            I FILED THIS MOTION LAST WEEK.  I DIDN'T PICK THE TIME

 6   FOR IT TO BE SET YESTERDAY.  I PREPARED SOMEONE TO ARGUE IT

 7   YESTERDAY.

 8            MR. ANTON WASN'T HERE YESTERDAY.  HE COULD EXPLAIN TO

 9   THE COURT WHY HE WASN'T HERE.  THAT'S WHEN IT WAS SET.  I CAN'T

10   BE IN TWO PLACES AT ONCE.  JUDGE COHN WANTS ME THERE AT NINE

11   O'CLOCK --

12            THE COURT:  WHAT TIME -- MR. SPIVACK, WHAT TIME DO YOU

13   BREAK FROM YOUR TRIAL?

14            MR. SPIVACK:  I DON'T KNOW.  I DON'T KNOW.  JUDGE

15   COHN -- WHENEVER WE BREAK, WE BREAK.  SO I DON'T KNOW, JUDGE.

16            THE COURT:  WELL, HOW WOULD YOU LIKE TO PROCEED,

17   MR. SPIVACK?  IT'S YOUR CLIENT.  YOU CAN HAVE SOMEBODY STAND IN

18   FOR YOU --

19            MR. SPIVACK:  NO.  THAT'S NOT --

20            THE COURT:  -- YOU'VE GOT ANOTHER TIN MINUTES --

21            MR. SPIVACK:  THAT'S NOT --

22            THE COURT:  -- DO YOU WANT TO DO THAT?

23            MR. SPIVACK:  THAT'S NOT FAIR TO HIM.  I JUST --

24   BECAUSE I TOLD THE COURT HOW MUCH TIME I HAD.  I WANT TO BE

25   ABLE TO RESPOND BEFORE I HAVE TO RUN UP TO ANOTHER COURTROOM.
```

Case 1:18-cv-24726-MGC   Document 52   Entered on FLSD Docket 01/16/2018   Page 13 of 28   12

```
 1            THE COURT:  MR. SPIVACK, I NEED TO HEAR THIS.

 2            TELL ME HOW YOU WOULD LIKE TO PROCEED.

 3            MR. SPIVACK:  FINE, JUDGE.  LET MR. ANTON FINISH AND

 4  WHEN THAT'S DONE I GUESS WE CAN RESET IT FOR TOMORROW MORNING,

 5  I'LL COME BACK AND GIVE YOU MY RESPONSE.  I DON'T KNOW WHAT

 6  ELSE TO DO.  I CAN'T BE IN TWO PLACES AT ONCE.

 7            THIS ISN'T MY -- THIS ISN'T MY FAULT OR MY CLIENT'S

 8  FAULT.  THIS WAS SET --

 9            THE COURT:  MR. SPIVACK, I JUST WANT TO KNOW WHAT YOU

10  WOULD LIKE TO DO.

11            MR. ANTON, ANYTHING ELSE THAT YOU WOULD LIKE TO SAY?

12            MR. SPIVACK:  NO, JUDGE.  JUST THAT THE GOVERNMENT IS

13  COMFORTABLE AT THIS POINT BASED ON THE STRENGTH OF THE CASE

14  THAT A $250,000 PERSONAL SURETY BOND WITH HOME DETENTION,

15  ELECTRONIC MONITORING AND A LIMITATION THAT WOULD PRECLUDE

16  MR. JUNGWIRTH FROM ACCESSING INTERNET IS SUFFICIENT TO PROTECT

17  THE COMMUNITY AT THIS POINT.

18            THE COURT:  THAT WASN'T PART OF THIS STIPULATION THAT

19  WAS PRESENTED YESTERDAY.

20            MR. ANTON:  THE INTERNET PORTION?  IF THAT WOULD HELP

21  ALLAY THE COURT'S CONCERNS --

22            THE COURT:  WELL --

23            MR. ANTON:  -- I MEAN CERTAINLY WE COULD ADD IN THAT

24  CONDITION --

25            THE COURT:  WEL, LET ME GIVE MR. SPIVACK AN
```

 1  OPPORTUNITY TO BE HEARD.

 2          MR. SPIVACK:  JUDGE, I LITERALLY HAVE FIVE MINUTES.

 3          I'M NOT -- ALL I CAN PRESENT TO THE COURT WHAT THIS

 4  WHOLE CASE IS ABOUT.  THIS IS A SCREENSHOT OF SOMEONE'S

 5  COMPUTER.  AND WHEN I SAY SOMEONE'S COMPUTER, LITERALLY THE

 6  GOVERNMENT DOESN'T KNOW WHOSE COMPUTER IT CAME OFF OF.

 7          IT'S A SCREENSHOT THAT PURPORTS TO SHOW IN A FORMAT

 8  THAT'S LIKING TO FACEBOOK BUT DOESN'T FACEBOOK ANYWHERE ON THIS

 9  AS FAR AS I CAN SEE, A COMMUNICATION BETWEEN SOMEONE WHO IS

10  REPRESENTING THEMSELVES AS A CRAIG JUNGWIRTH AND SOMEONE ELSE.

11  YOU'LL NOTICE THE PHOTOGRAPH OF THE CRAIG JUNGWIRTH THERE IS

12  NOT MY CLIENT, IT'S SOMEBODY ELSE.

13          OKAY?  WE (UNINTELLIGIBLE) WHAT WAS THE PROBABLE

14  CAUSE?  IF YOUR HONOR LOOKS AT THE COMPLAINT IN THIS CASE, AND

15  I WILL READ FROM THE COMPLAINT, THIS WAS THE TIE -- THIS WAS

16  THE TIE FROM THAT STATEMENT TO MY CLIENT.

17          THE GOVERNMENT INITIALLY SAID UNDER OATH THAT ON

18  SEPTEMBER 1ST, 2016, A SUBPOENA WAS ISSUED TO FACEBOOK FOR

19  SUBSCRIBER INFORMATION FOR THE FACEBOOK ACCOUNT OF CRAIG

20  JUNGWIRTH BEARING ACCOUNT NUMBER SEVEN FOUR THREE FIVE NINE

21  FIVE OH EIGHT THREE, THE SOURCE OF THE THREATENING

22  COMMUNNICATIONS.

23          SO INITIALLY THE GOVERNMENT SAID, WE KNOW THE FACEBOOK

24  ACCOUNT THAT THE THREAT CAME FROM.  IT'S A SPECIFIC FACEBOOK

25  ACCOUNT BEARING ACCOUNT NUMBER SEVEN FOUR THREE FIVE NINE FIVE

1 OH EIGHT THREE.  THAT'S WHAT THEY SAID UNDER OATH.  THAT WAS
2 WRONG.  THEY DID NOT KNOW THAT.  THEY MISREPRESENTED THAT TO
3 THE COURT.  AND THAT WAS IN THE COMPLAINT.

4        I (UNINTELLIGIBLE) CHANCE TO LOOK AT THE SEARCH
5 WARRANT AFFIDAVIT YET.  I DON'T KNOW IF THAT'S IN THE SEARCH
6 WARRANT AFFIDAVITS, AND I DON'T KNOW WHAT AFFECT -- LEGAL
7 AFFECT THAT MISREPRESENTATION HAS.

8        BUT BASICLAY WHAT WE FOUND OUT LAST WEEK IN FRONT OF
9 JUDGE HUNT WAS, NO, THE AFFIDAVIT WAS INCORRECT, THE GOVERNMENT
10 DID NOT BACKTRACK THE THREAT TO THAT ACCOUNT NOR ANY SPECIFIC
11 FACEBOOK ACCOUNT.  NOR HAVE THEY BACK TRACKED THAT THREAT TO
12 ANY IP ADDRESS THAT GOES WITH MY CLIENT OR ANY IP ADDRESS.

13        SO LITERALLY ANY LUNATIC OUT THERE COULD HAVE SAID,
14 I'M CRAIG JUNGWIRTH, PUT THIS THING OUT THERE, SOMEONE ELSE
15 TAKES A PICTURE OF IT, NOTIFIES THE FBI AND MY CLIENT ENDS UP
16 SITTING IN JAIL FOR TWO MONTHS.

17        THAT IS EXACTLY WHAT HAPPENED HERE, JUDGE.

18        THE COURT:  ACCORDING TO MR. ANTON WHEN AGENTS
19 APPROACHED HIM HE SAID, THAT WAS NOT MY POST.

20        HOW WOULD HAVE HE KNOWN ABOUT THE POST?

21        MR. SPIVACK:  A VERY GOOD QUESTION.  HERE IS THE
22 ANSWER.

23        THE GOVERNMENT IN THEIR DISCOVERY SHOWS THAT THERE WAS
24 AN E-MAIL FROM A FORMER LOVER OF MY CLIENT TO MY CLIENT'S
25 MOTHER AT THREE P.M., THE SAME DATE THAT THE GOVERNMENT

 1 BELIEVES THIS THREAT CAME OUT WHERE THE LOVER SAYS, YOU SHOULD

 2 TALK TO YOUR SON.  HE'S PUTTING THESE THREATS OUT THERE.  HE IS

 3 VERY SICK.  HE NEEDS HELP.

 4          THAT'S HOW YOU COULD FIGURE THAT OUT, JUDGE.  OKAY?

 5          ALL HE KNOWS IS TWO FBI AGENTS ARE COMING UP TO HIM TO

 6 TALK TO HIM ABOUT A THREAT.  HE DIDN'T SAY HE KNEW WHAT THE

 7 THREAT WAS ABOUT.  HE DIDN'T SAY ANY OF THE DETAILS OF THE

 8 THREAT.  HE JUST SAID, THAT WASN'T ME, BECAUSE I'M SURE THAT'S

 9 WHAT HE SAID TO HIS MOTHER THAT DAY WAS, I DON'T KNOW WHAT THIS

10 GUY IS TALKING ABOUT.  HE'S A FORMER LOVER OF MINE BUT I DIDN'T

11 PUT ANY THREAT OUT THERE.

12          SO MY CLIENT HAS LITERALLY BEEN SITTING IN JAIL FOR

13 TWO MONTHS.  THIS COULD HAVE HAPPENED TO ANYONE.  I COULD

14 HAVE --

15          THE COURT:  WAIT.  WAIT.  WAIT.  TONE IT DOWN A

16 LITTLE.  THERE IS NO NEED TO SHOUT.

17          MR. SPIVACK:  THERE REALLY IS BECAUSE THIS MAN HAS

18 BEEN SITTING IN JAIL FOR TWO MONTHS --

19          (BOTH TALKING AT THE SAME TIME)

20          THE COURT:  MR. SPIVACK, PLEASE DON'T SHOUT.  ALL

21 RIGHT?

22          MR. SPIVACK:  I COULD LITERALLY GO OVER TO THE

23 MCDONALD'S OVER HERE THAT HAS YIFY WITH MY LAPTOP, OPEN UP MY

24 OWN FACEBOOK ACCOUNT USING THE NAME MARC ANTON, PUT PICTURE OF

25 ANY OF THE PEOPLE IN HEAR THERE, SEND OUT A THREAT THAT BASED

 1 | ON WHAT I KNOW MARC ANTON, I COULD SAY THINGS IN THERE LIKE,

 2 | WELL, MARC WOULD NEVER -- MR. ANTON WOULD NEVER SAY THIS.

 3 | BUT I COULD PUT SOMETHING IN THERE LIKE, I HATE ALL

 4 | DEFENSE ATTORNEYS.  I GET TO GO INTO THE COURTHOUSE WITHOUT

 5 | THEM SEARCHING ME BECAUSE I'M A PROSECUTOR.  THE NEXT TIME I'M

 6 | IN THE COURTHOUSE I'M GOING TO SHOOT MICHAEL SPIVACK IN THE

 7 | HEELED BECAUSE I JUST CAN'T STAND THE GUY.

 8 | PUT IT OUT THERE, AND ACCORDING TO THE GOVERNMENT

 9 | THAT'S GOOD ENOUGH TO LOCK MR. ANTON UP FOR TWO MONTHS.

10 | THAT'S WHAT'S GOING ON HERE.

11 | THE COURT:  WELL, AARON, CAN YOU CALL JUDGE COHN'S

12 | CHAMBERS AND SEE IF THEY CAN GIVE MR. SPIVACK ANOTHER TEN

13 | MONTHS (INAUDIBLE)

14 | MR. ANTON, CAN YOU RESPOND TO THAT?

15 | MR. ANTON:  JUDGE, THE RESPONSE IS, THE GOVERNMENT IS

16 | COMFORTABLE THAT THERE WAS PROBABLE CAUSE AT THE TIME OF THE

17 | INITIAL ARREST AND FOR THE ISSUANCE FOR THE SEARCH WARRANTS AND

18 | THE COMPLAINT.

19 | AND AS SOON AS THE GOVERNMENT SEARCHED THE CRAIG

20 | JUNGWIRTH ACCOUNT THAT THEY EXECUTED THE SEARCH WARRANT ON AND

21 | REALIZED THAT THE POST DID NOT APPEAR THERE AND ADDITIONAL

22 | INVESTIGATION WAS NECESSARY WE IMMEDIATELY CONTACTED COUNSEL

23 | AND AGREED THAT A BOND WOULD BE APPROPRIATE.

24 | SO I STAND HERE TODAY, AS I HAVE NOW FOR LAST --

25 | THE COURT:  NO.  I GUESS MY PROBLEM IS THIS.

 1          IS THAT IF YOU DON'T FEEL LIKE YOU HAVE A PROSECUTABLE

 2   CASE, YOU CALL IT WEAK.  DON'T YOU HAVE AN ETHICAL OBLIGATION

 3   AT THAT POINT TO DISMISS THE CHARGES, AND IF IT TURNS OUT LATER

 4   THAT THERE IS EVIDENCE TO SUPPORT IT THEN TO REFILE THE CHARGE

 5   AT THAT TIME.

 6          BUT IT'S ESSENTIALLY I GUESS -- I THINK WHAT I HEAR

 7   YOU SAYING IS, WE DON'T REALLY HAVE ANY EVIDENCE.  SO LET'S

 8   JUST, YOU KNOW, TAKE SOMEBODY WHO MADE THESE SORTS OF HORRIBLE

 9   THREATS AND JUST, YOU KNOW, PUT HIM ON A PERSONAL SURETY BOND,

10   WHEREAS, YOU KNOW, I WOULD THINK THAT IF YOU DON'T HAVE THE

11   EVIDENCE THAT THE REMEDY WOULD BE DISMISSAL AND NOT A PERSONAL

12   SURETY BOND.

13          LET ME ASK YOU THIS.  IF IN FACT THESE OTHER 59

14   ACCOUNTS DO NOT SHOW WHAT YOU'RE LOOKING FOR IS THE GOVERNMENT

15   GOING -- INTENDING TO GO FORWARD JUST ON THE BASIS OF THE

16   CIRCUMSTANTIAL EVIDENCE?

17          MR. ANTON:  MOST LIKELY NOT.

18          THE COURT:  ALL RIGHT.  SO AT THIS POINT, THEN, WOULD

19   IT BE FAIR TO SAY THAT YOU DO NOT HAVE THE EVIDENCE TO GO

20   FORWARD WITH IT AT THIS POINT TODAY WITH THIS CASE.

21          MR. ANTON:  AT THIS POINT TODAY?  THE GOVERNMENT --

22   THE GOVERNMENT FEELS THAT WHILE THERE IS --

23          (BOTH TALKING AT THE SAME TIME)

24          THE COURT:  -- CALLED FOR TRIAL TOMORROW MORNING?

25          MR. ANTON:  IF THE CASE WAS CALLED FOR TRIAL TOMORROW

 1 | MORNING THE GOVERNMENT IS CONFIDENT THAT THERE IS IN FACT

 2 | PROBABLE CAUSE AND CERTAINLY A MOTIVE, BUT THAT -- THAT IT IS

 3 | POSSIBLE THAT THE JURY WOULD RETURN A NOT GUILTY VERDICT BASED

 4 | ON NOT BEING A STANDARD OF BEYOND A REASONABLE DOUBT.

 5 | THE COURT:  THE QUESTION IS, WOULD YOU BY PROCEEDING

 6 | WITH THE CASE BASED UPON THE INFORMATION THAT YOU HAVE NOW?

 7 | MR. ANTON:  BASED UPON THE DEFENDANT'S THREATS TO THE

 8 | COMMUNITY AND THE NATURE OF THE POSTS, IT'S POSSIBLE, YES.

 9 | THE COURT:  THAT YOU WOULD.

10 | AARON, DID JUDGE COHN --

11 | THE CLERK:  TEN MINUTES, JUDGE.

12 | THE COURT:  AN EXTRA TEN MINUTES.

13 | MR. ANTON:  BUT, I MEAN, LOOK, JUDGE, I HAVE BEEN

14 | CANDID WITH JUDGE HUNT, JUDGE ZLOCH AND, OF COURSE, YOUR HONOR.

15 | THE CASE IS NOT AS STRONG AS THE GOVERNMENT WOULD LIKE

16 | IT TO BE.  AND THE GOVERNMENT WAS GRANTED A CONTINUANCE BY

17 | JUDGE ZLOCH TO CONTINUE ITS INVESTIGATION INTO THE REMAINING 59

18 | OTHER ACCOUNTS.

19 | IF THEY DON'T REVEAL THE EXISTENCE OF THE THREAT AND

20 | WE CAN'T FIND IT IN ANY OTHER WAY, AT THAT TIME A DECISION WILL

21 | BE MADE EITHER TO PROCEED OR TO DISMISS THE CASE.

22 | BUT, JUDGE --

23 | THE COURT:  WHEN WILL YOU HAVE THAT INFORMATION?

24 | MR. ANTON:  JUDGE, WE SHOULD BE ISSUING -- WE SHOULD

25 | BE GETTING THOSE SEARCH WARRANTS GOING OUT IN THE NEXT COUPLE

 1   OF DAYS, AND IT USUALLY TAKES ABOUT 10 -- 1O DAYS TO TWO WEEKS

 2   TO HAVE FACEBOOK RESPOND.

 3        UNFORTUNATELY I DON'T HAVE A PHONE NUMBER.  I HAVE TO

 4   DO THINGS THROUGH A ONLINE (INAUDIBLE) THE GOVERNMENT IS MOVING

 5   AS QUICKLY AS IT POSSIBLY CAN.

 6        THE COURT:  I GUESS WHAT I HAVE PROBLEMS IS, IS THE

 7   APPROACH.

 8        IT SEEMS TO ME THAT IF YOU DON'T HAVE THE EVIDENCE

 9   THAT THE APPROPRIATE CURSE IS TO DISMISS THE CHARGE.  AND THEN

10   WHEN AND IF YOU GET IT TO FILE THE CHARGE AS OPPOSED TO JUST

11   SAYING, WELL, WE DON'T HAVE THE EVIDENCE SO WE'LL JUST LOWER A

12   BOND OR A LOOSER BOND, NOTWITHSTANDING THAT, YOU KNOW, THERE IS

13   STILL AN INDICTMENT THAT'S VERY, VERY SERIOUS.

14        MR. ANTON:  I UNDERSTAND.

15        THE COURT:  LET ME HEAR YOUR PROPOSAL FOR THE BOND

16   WITH ALL THE CONDITIONS.

17        MR. ANTON:  JUDGE, THE PROPOSAL WOULD BE A $250,000

18   PERSONAL SURETY BOND WITH HOME DETENTION, ELECTRONIC

19   MONITORING --

20        THE COURT:  IS THERE ANY CO-SIGNATURE ON THE BOND?

21        MR. ANTON:  IT WOULD BE HIS MOM, MARY JUNGWIRTH.

22        HE WOULD BE PERMITTED TO TRAVEL TO AND FROM THE

23   SOUTHERN DISTRICT OF FLORIDA AND THE MIDDLE DISTRICT OF FLORIDA

24   WHERE HE RESIDES.  AND IF IT WOULD HELP ALLAY THE COURT'S

25   CONCERNS THERE WOULD BE -- WE WOULD ASK THAT THERE BE NO ACCESS

 1 | TO THE INTERNET.

 2 |         THE COURT:  AND NO CELLPHONE OR COMPUTERS.

 3 |         MR. ANTON:  CERTAINLY NO COMPUTERS OR NO CELLPHONES

 4 | (INAUDIBLE)

 5 |         THE COURT:  ALL RIGHT.

 6 |         AND IS THAT THE -- ARE THOSE THE TERMS, MR. SPIVACK,

 7 | THAT YOU CAN AGREE TO?

 8 |         MR. SPIVACK:  NO, YOUR HONOR.

 9 |         I HAD SUBMITTED, YOU KNOW (UNINTELLIGIBLE) TURNS OUT.

10 |         THE COURT:  I DON'T HAVE --

11 |         MR. SPIVACK:  YOU DON'T HAVE A COPY, YOUR HONOR?

12 |         THE COURT:  NO.

13 |         MR. SPIVACK:  I CAN GIVE YOU A COPY, JUDGE.  I'LL GIVE

14 | YOU MY COPY.

15 |         MAY I APPROACH?

16 |         THE COURT:  YES.

17 |         THE COURT:  THE DIFFERENCE I TAKE IT BETWEEN YOUR

18 | UNOPPOSED MOTION AND THE GOVERNMENT'S RECOMMENDATION TODAY IS

19 | THE INTERNET ACCESS?

20 |         MR. SPIVACK:  YES, YOUR HONOR.

21 |         MY CLIENT LIVES -- RESIDES WITH HIS MOTHER.  YOU KNOW,

22 | I HATE TO BRING THIS OUT IN THIS FORUM BUT I GUESS I SHOULD SO

23 | THE COURT UNDERSTANDS EXACTLY WHAT'S GOING ON.

24 |         HIS MOTHER WAS SEXUALLY ASSAULTED.  HIS MOTHER IS

25 | 70 --

 1              THE DEFENDANT:  SEVENTY-EIGHT.

 2              MR. SPIVACK:  SEVENTY-EIGHT YEARS OLD.

 3              SO SOMEONE HAD TO MOVE IN TO LIVE WITH THE MOTHER.  SO

 4   HE LITERALLY MOVED IN TO BE THERE WITH THE MOM.  THE MOM EVEN

 5   THOUGH SHE'S 78 IS INTERNET SAVVY AND SHE SELLS AVON PRODUCTS

 6   AND SHE GOES ON LINE TO ORDER THE PRODUCTS.  AND SHE'S BEEN

 7   DOING THIS FOR YEARS AND YEARS AND YEARS.

 8              I HAVE A CLIENT -- AGAIN, JUDGE, I HANDED YOU THE

 9   SCREENSHOT.  THAT IS ALL THEY HAVE.

10              WHEN MR. ANTON CAME BEFORE --

11              THE COURT:  LET'S NOT REHASH.

12              MR. SPIVACK:  JUDGE, I --

13              THE COURT:  -- WE GOT THE MOTHER'S USE OF THE

14   INTERNET --

15              MR. ANTON:  I HAVE NO PROBLEM WITH THE MOM USING IT.

16              MY ONLY PROBLEM IN THEORY WOULD BE THE DEFENDANT USING

17   THE INTERNET.  SO IF MOM WANTS TO CONTINUES HER BUSINESS THAT'S

18   PERFECTLY FINE WITH ME.  THERE COULD BE INTERNET ACCESS IN THE

19   HOUSE.  THAT'S NOT A PROBLEM.  IT'S JUST THE DEFENDANT'S USE OF

20   IT.

21              THE COURT:  HOW DO WE MONITOR WHEHTER OR NOT THE

22   DEFENDANT IS USING THE INTERNET?

23              MR. ANTON:  JUDGE, IT WOULD HAVE TO BE THROUGH

24   PRETRIAL SERVICES IN SOME WAY.  I MEAN, THE SAME WAY IN WHICH

25   THEY MONITORED INDIVIDUALS WHO ARE PROHIBITED FROM ACCESSING

 1 | THE INTERNET.

 2 |         THE COURT:  ALL RIGHT.

 3 |         MR. SPIVACK:  JUDGE, COULD WE HEAR FROM PRETRIAL

 4 | SERVICES?  I DON'T KNOW IF THEY CAN ACTUALLY DO THAT.

 5 |         THE PROBATION OFFICER:  YES, JUDGE, WE CAN (INAUDIBLE)

 6 |         THE COURT:  WHY DON'T YOU --

 7 |         (INAUDIBLE)

 8 |         THE PROBATION OFFICER:  YES, JUDGE, WE HAVE EQUIPMENT

 9 | THAT WE CAN USE TO SEARCH THE COMPUTER INTERNET WISE WHERE HE'S

10 | BEEN AND PEOPLE WHO HAD BEEN IN TOUCH WITH HIM ON THAT

11 | COMPUTER.

12 |         THE COURT:  ALL RIGHT.

13 |         I WILL GO AHEAD AND I'LL SET BOND IN THE AMOUNT OF

14 | $250,000 CO-SIGNED BY THE DEFENDANT'S MOTHER WITH ELECTRONIC

15 | MONITORING.  I BELIEVE THE DEFENDANT WAS FOUND INDIGENT TO

16 | QUALIFY FOR THE PUBLIC DEFENDER SO THAT WILL BE AT THE COURT

17 | EXPENSE.

18 |         HOME DETENTION WILL BE 24/7 WITH THE ONLY EXCEPTION

19 | BEING COMING TO COURT AND MEETING WITH COUNSEL, AND THERE BEING

20 | NO USE OF THE INTERNET.

21 |         MR. JUNGWIRTH, YOU SHALL SUBMIT TO A SEARCH

22 | CONDUCTED -- ANY SEARCH CONDUCTED BY THE PROBATION OFFICER IN A

23 | REASONABLE TIME AND MANNER.

24 |         YOU SHALL NOT ESTABLISH OR MAINTAIN ANY E-MAIL OR

25 | SOCIAL MEDIA ACCOUNT AND YOU SHALL NOT USE THE INTERNET IN ANY

1  OTHER RESPECT.  AND AGAIN, YOU SHALL SUBMIT TO THE U.S.

2  PROBATION OFFICER CONDUCTING PERIODIC UNANNOUNCED INSPECTIONS

3  OF YOUR COMPUTER EQUIPMENT.

4         IN ADDITION I'M GOING TO SET THE FOLLOWING STANDARDS

5  AND SPECIAL CONDITIONS OF BOND.  I'LL ASK THAT YOU PLEASE

6  LISTEN CAREFULLY AND WHEN I'M DONE I'LL ASK WHETHER YOU

7  UNDERSTAND EACH OF THE CONDITIONS THAT I SET FORTH.

8         FIRST AND FOREMOST YOU ARE TO APPEAR IN COURT AS AT

9  SUCH TIMES AND PLACES AS DIRECTED TO APPEAR.  YOUR FAILURE TO

10  DO SO MAY RESULT IN A SEPARATE INDICTABLE OFFENSE OF BOND

11  JUMPING.

12         YOUR TRAVEL WILL BE RESTRICTED TO THE MIDDLE AND

13  SOUTHERN DISTRICTS OF FLORIDA.  YOU ARE TO RESIDE -- IS IT

14  CITRUS CHASE DRIVE IN ORLANDO?

15         MR. SPIVACK:  YES, YOUR HONOR.

16         THE COURT:  ALL RIGHT.

17         YOU'RE TO RESIDE AT THAT ADDRESS AS REFLECTED ON THE

18  PRETRIAL SERVICES REPORT AGAIN 24/7.

19         THERE WILL BE A BRACELET AFFIXED TO YOUR WRIST OR

20  ANKLE.  DO NOT LEAVE EXCEPT FOR PURPOSES OF MEETING WITH COUPLE

21  OR COMING TO COURT AND IF THE PROBATION OFFICER NEEDS FOR YOU

22  TO GO INTO THE PROBATION OFFICE.  I DON'T KNOW WHETHER YOU'RE

23  GOING TO COME HERE OR HAVE YOU GO TO THEM.

24         YOU SHALL NOT COMMIT ANY VIOLATION OF LOCAL, STATE, OR

25  FEDERAL LAW.

Case 1:18-cv-24726-MGC Document 12-2 Entered on FLSD Docket 07/27/2018 Page 25 of 28
Case 0:16-cv-60256-WJZ Document 59 Entered on FLSD Docket 01/16/2018 Page 24 of 27

24

 1           DO YOU POSSESS A PASSPORT?

 2           THE DEFENDANT:  YES, YOUR HONOR.

 3           THE COURT:  AND WHERE IS THE PASSPORT LOCATED?

 4           THE DEFENDANT:  WITH MY MOTHER AT THE RESIDENCE.

 5           THE COURT:  ALL RIGHT.

 6           BEFORE YOU'LL BE PERMITTED TO BE RELEASED YOUR MOTHER

 7  WILL NEED TO SURRENDER THE PASSPORT TO THE PROBATION OFFICE IN

 8  ORLANDO.

 9           WHILE ON BOND YOU'RE NOT TO BE IN THE POSSESSION OF

10  ANY PASSPORTS OR COMPARABLE TRAVEL DOCUMENTS.

11           YOU'RE TO REPORT TO THE PRETRIAL SERVICES, WHICH IS

12  THE PROBATION OFFICE, IN ORLANDO WITH THE FREQUENCY THAT THEY

13  INSTRUCT YOU TO REPORT.

14           INASMUCH AS YOU ARE GOING TO BE AT HOME 24/7, I'LL

15  DELETE THE EMPLOYMENT REQUIREMENT.

16           YOU ARE TO AVOID ANY CONTACT WITH ANY (INAUDIBLE) OR

17  WITNESSES TO THESE ALLEGATIONS EXCEPT THROUGH YOUR ATTORNEY

18  (INAUDIBLE) NECESSARY IN PREPARING THEIR DEFENSE.

19           DO YOU HAVE ANY GUNS?

20           THE DEFENDANT:  NO, YOUR HONOR.

21           THE COURT:  OKAY.  BEAR IN MIND THAT WHILE ON BOND

22  YOU'RE NOT TO BE IN THE POSSESSION OF ANY GUNS OR OTHER

23  DANGEROUS WEAPONS.

24           YOU SHALL, OF COURSE, REFRAIN FROM THE CONSUMPTION OF

25  ANY ILLEGAL NARCOTICS AND FROM EXCESSIVE USE OF ALCOHOL, SUBMIT

Case 1:18-cv-24726-MGC   Document 13-2   Entered on FLSD Docket 07/27/2018   Page 26 of 28
Case 0:16-cv-60246-WJZ   Document 59   Entered on FLSD Docket 01/16/2018   Page 25 of 27

25

 1 | TO ANY RANDOM URINE ANALYSIS THAT THE PRETRIAL SERVICES
 2 | OFFICER, WHICH IS THE PROBATION OFFICER, DEEMS NECESSARY AND
 3 | (INAUDIBLE) ANY RECOMMENDED FOLLOW UP TREATMENT.
 4 | LET ME ASK IF THE GOVERNMENT OR THE DEFENSE HAS ANY
 5 | OTHER RECOMMENDED ADDITIONS OR MODIFICATIONS OF BOND?
 6 | MR. ANTON:  NO, YOUR HONOR, NOTHING FROM THE
 7 | GOVERNMENT.  THANK YOU.
 8 | MR. SPIVACK:  NO, YOUR HONOR.  THANK YOU, JUDGE.
 9 | THE COURT:  MR. JUNGWIRTH, DO YOU UNDERSTAND EACH AND
10 | EVERY ONE OF THE CONDITIONS OF BOND THAT I SET FORTH?
11 | THE DEFENDANT:  YES, YOUR HONOR.
12 | THE COURT:  IN JUST A MOMENT WE'RE GOING TO GIVE YOU A
13 | FORM ENTITLED CONDITIONS OF RELEASE.  I WOULD LIKE YOU TO
14 | PLEASE READ AND SIGN IT, BUT DON'T SIGN UNTIL YOU HAVE READ IT
15 | AND THOROUGHLY UNDERSTAND IT.
16 | FINALLY, I NEED TO INFORM YOU AS I INFORM ALL
17 | DEFENDANTS THAT ANY VIOLATION OF ANY ONE OR A COMBINATION OF
18 | CONDITIONS OF RELEASE THAT YOU MAY HAVE A WARRANT ISSUED FOR
19 | YOUR ARREST, YOUR BOND MAY BE REVOKED AND YOU YOU'LL BE
20 | SUBJECTING YOURSELF TO CONTEMPT OF COURT AS WELL AS FURTHER AND
21 | ADDITIONAL CRIMINAL PENALTIES.
22 | DO YOU UNDERSTAND?
23 | THE DEFENDANT:  YES, YOUR HONOR.
24 | THE COURT:  MR. SPIVACK, WHEN WILL YOUR CLIENT'S
25 | MOTHER BE ABLE TO SURRENDER THE PASSPORT?

 1               MR. SPIVACK:  JUDGE -- OH.  I'M NOT SURE.  I'LL HAVE

 2   TO CONTACT YOU AND LET YOUR HONOR KNOW.

 3               THE COURT:  OKAY.  ONCE AGAIN.  MR. JUNGWIRTH WILL NOT

 4   BE PERMITTED TO BE RELEASED UNTIL THAT IS SURRENDERED AND IT

 5   WILL BE DONE AT THE PROBATION OFFICE IN ORLANDO.

 6               LET ME ASK IF THE GOVERNMENT OR THE DEFENSE HAS ANY

 7   OTHER MATTERS AS TO MR. JUNGWIRTH THAT THEY WISH TO RAISE?

 8               MR. ANTON:  NO, YOUR HONOR.

 9               MR. SPIVACK:  NO, YOUR HONOR.  THANK YOU, JUDGE.

10               THE COURT:  MR. JUNGWIRTH, DO YOU HAVE ANY QUESTIONS

11   THAT I CAN ANSWER ABOUT WHAT WE'VE DONE TODAY, ABOUT THE

12   CONDITIONS OF YOUR BOND OR ABOUT WHAT WILL BE OCCURRING NEXT?

13               THE DEFENDANT:  NO, YOUR HONOR.

14               THE COURT:  ALL RIGHT.  VERY WELL.  THANK YOU.

15               ALL RIGHT.  LET'S PROCEED TO THE NEXT MATTER --

16   MR. SPIVACK, DO YOU WANT THIS BACK OR IS THIS -- OR DO YOU WANT

17   THIS AS A COURT EXHIBIT?

18               MR. SPIVACK:  IF THAT COULD BE USED AS A COURT

19   EXHIBIT, YOUR HONOR?  I DON'T NEED ANY COPY.

20               THE COURT:  ALL RIGHT.  LET US PROCEED TO OUR NINE

21   O'CLOCK CALENDAR.

22                               - - -

23

24

25

Case 1:18-cv-24726-MGC   Document 12-2   Entered on FLSD Docket 07/27/2018   Page 28 of 28
Case 0:16-cv-60246-WJZ   Document 59   Entered on FLSD Docket 01/16/2018   Page 27 of 27

27

1

2

3                          C E R T I F I C A T E

4

5

6    UNITED STATES OF AMERICA

7    SOUTHERN DISTRICT OF FLORIDA

8

9

10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12   HEREBY CERTIFY THAT THE FOREGOING 26 PAGES CONSTITUTE A TRUE

13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14   THE CITY OF FORT LAUDERDALE, FLORIDA, IN THE MATTER THEREIN

15   STATED.

16        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 8TH

17   DAY OF JANUARY 2018.

18

19                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
20                              CERTIFIED COURT REPORTER
                                9960 SW 4TH STREET
21                              PLANTATION, FL 33324
                                TELEPHONE 954 424-6723
22

23

24

25